1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TONY C. ANDREASEN,

              Plaintiff,

     v.

SUPERVALU, INC. a Washington for
Profit Corporation; and DAVE WIEST,
and "JANE DOE" WIEST and the marital
community composed thereof, MIKE
MUNZ and "JANE DOE" MUNZ, and
JOHN DOES 1-10,

              Defendants.

CASE NO. 12-cv-05914-RBL

ORDER GRANTING DEFENDANT
SUPERVALU'S MOTION FOR
JUDGMENT ON THE PLEADINGS

[DKT. #26]

**INTRODUCTION**

     THIS MATTER is before the Court on Defendant Supervalu's Motion for Judgment on

the Pleadings [Dkt. #26].  Plaintiff Tony Andreasen was formerly employed by Defendant

Supervalu.  This lawsuit arises out of his employment and termination.  Andreasen claims that

two co-workers, Wiest and Munce, harassed him because of his sexual orientation.  Andreasen

sued the individuals and Supervalu in state court, asserting state law claims for violations of

Washington's Law Against Discrimination and various associated tort claims.  Andreasen claims

that Supervalu is liable for failing to deter the harassment.  Andreasen, Weist and Munce were all

1   members of an employee union that had negotiated a collective bargaining agreement (CBA)

2   with Supervalu.

3         Supervalu removed the case to this Court, based on its claim that Andreasen's state law

4   claims are preempted by Section 301(a) of the Labor Management Relations Act.  Supervalu

5   now moves for Judgment on the Pleadings on this same basis.  It argues that resolution of

6   Andreasen's state law claims against it requires interpretation of the CBA.  It also argues that

7   Andreasen's claims should be dismissed because he failed to allege and cannot allege that he

8   exhausted his contractual remedies under the CBA.

9         Because Supervalu is correct, its Motion is GRANTED and Plaintiff's claims against it

10   are DISMISSED with prejudice.

11                                           **BACKGROUND**

12         Plaintiff was an employee at a Supervalu and/or its predecessor's warehouse from 1997

13   to approximately August 1, 2011.  The terms and conditions of Andreasen's (and Defendants

14   Weist and Munce's) employment were governed by a collective bargaining agreement between

15   Supervalu and Teamsters Local Union No. 117.

16         The CBA provides a three step grievance process ending in binding third-party

17   arbitration.  (*See* CBA Article 23 "Settlement of Disputes," attached to Wills Dec [Dkt. #27], Ex

18   A at 21–24).  The arbitration process is the exclusive method of settling grievances under the

19   CBA and any grievance must be made within 90 days of the date of the matter giving rise to the

20   grievance. *Id.* at 21-23.

21         The CBA's non-discrimination policy establishes that Supervalu and the Union "shall not

22   discriminate against any individual with respect to compensation, terms, conditions or privileges

23   or employment because of race, religion, color, age, sex, national origin…." (*See* CBA attached

24

1   to Wills Dec [Dkt. #27], "Equal Employment," Article 4, Ex A at 4). It also provides that any

2   employee's claim that Supervalu has violated the provisions of "this Section or provisions of any

3   federal, state anti-discrimination clause shall be subject to the Settlement of Disputes Section."

4   *Id*.

5        The CBA also requires that there must be "just cause" before an employee is warned,

6   suspended, or discharged.  (*See* CBA Article 5 "Discharge and Suspension," attached to Wills

7   Dec [Dkt. 27], Ex A at 21–24).  Employees must be given written notice including facts

8   "forming the grounds of employer dissatisfaction," and all grievances as the result of "any such

9   investigation" must be settled in accordance with the CBA Settlement of Disputes provisions.

10  *Id*. at 4-5.

11       Plaintiff alleges that his co-workers repeatedly made offensive, derogatory and degrading

12  remarks about his sexual orientation, posted "offensive and derogatory and sexually suggestive

13  messages and images" on his work station and assigned equipment, "stared and leered in an

14  unwanted and intimidating manner," and "repeatedly acted in a way that created a hostile work

15  environment."  (Compl. at 3, Dkt. #29.)  Plaintiff alleges that he repeatedly reported the behavior

16  to Supervalu's HR department but that it "took no appreciable action to deter the conduct" and

17  he was asked to stop reporting the behavior of his co-workers because he was "harassing the

18  management."  *Id*.  Plaintiff contends that he "could no longer tolerate the hostile work

19  environment and was constructively discharged…."  *Id*. at 4.  He did not take any steps under the

20  CBA's grievance process.

21

22

23

24

1    In September 2012,[1] Plaintiff sued, alleging claims against all Defendants for assault,

2  negligent infliction of emotional distress, intentional infliction of emotional distress, outrage,

3  negligent supervision and or hiring, and for discrimination in violation of the Washington Law

4  Against Discrimination (WLAD).  Plaintiff's claims against Supervalu are all based on the

5  allegation that it "failed to deter" his co-workers' alleged behavior.

6    Supervalu timely removed Plaintiff's Complaint to this Court, based on its claim that

7  Plaintiff's state law claims are preempted by Section 301.  Supervalu argues that its ability to

8  take disciplinary action against Weist and Munce was governed solely by the CBA, and that all

9  of Plaintiff's claims against it are preempted by Section 301.  It argues that because Plaintiff's

10  claims are preempted (and because he did not exhaust his contractual remedies under the CBA

11  before bringing this lawsuit), Plaintiff's claims must be dismissed with prejudice.  Supervalu

12  seeks a Judgment on the Pleadings under Rule 12(c) on this basis.

13    Plaintiff concedes that Supervalu "may have needed to consult the CBA in the context of

14  how to handle the complaints lodged by the plaintiff," but argues that his right to a cause of

15  action under the WLAD is completely independent from the CBA and therefore cannot be

16  preempted.  Plaintiff does not respond to Supervalu's motion regarding his emotional distress

17  claims other than to include one sentence saying those claims should not be preempted because

18  his WLAD claim should not be preempted, and the WLAD statute allows plaintiffs to recover for

19  emotional distress.  He does not respond to Supervalu's motion regarding his Negligent

20  Hiring/Supervision and Assault claims.  In short, he concedes that his real claim is the WLAD

21  claim and the Court's analysis will focus on that claim.

22

23

24    [1] In January 2012, Plaintiff brought a similar claim against the same Defendants.  This Court granted Plaintiff's Rule 41(a) motion for dismissal without prejudice.

1 | DISCUSSION

2 | **A.  Fed. R. Civ. P. 12(c) Judgment on the Pleadings.**

3 |     Federal Rule of Civil Procedure 12(c) allows a party to move the court for a judgment on

4 | the pleadings.  A Rule 12(c) motion is evaluated under the same standard as a motion under Rule

5 | 12(b)(6).  Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

6 | theory or absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v.*

7 | *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff's complaint must allege

8 | facts to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937,

9 | 1949 (2009).  A claim has "facial plausibility" when the party seeking relief "pleads factual

10 | content that allows the court to draw the reasonable inference that the defendant is liable for the

11 | misconduct alleged."  *Id.*  Although the Court must accept as true the Complaint's well-pled

12 | facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise

13 | proper Rule 12(b)(6) motion.  *Vasquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007);

14 | *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[A] plaintiff's obligation

15 | to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

16 | and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations

17 | must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*,

18 | 550 U.S. 544, 555 (2007) (citations and footnote omitted).  This requires a plaintiff to plead

19 | "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. at

20 | 1949 (citing *Twombly*).

21 |     Generally, in ruling on a 12(b)(6) motion to dismiss, the trial court may only consider the

22 | allegations contained in the complaint, however a document is not "outside" the complaint if the

23 | complaint specifically refers to the document and if its authenticity is not questioned.  *See, e.g.,*

24 |

1    *Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704,

2    129 L.Ed.2d 832 (1994); *overruled on other grounds by Galbraith v. County of Santa Clara,* 307

3    F.3d 1119 (9th Cir. 2002); *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n.4 (9th Cir. 1996)

4    (appropriate for trial court to consider other portions of a document referenced in a complaint in

5    a motion to dismiss and doing so does not convert the motion into one for summary judgment),

6    *cert. denied*, 520 U.S. 1103, 117 S.Ct. 1105, 137 L.Ed.2d 308 (1997).

7       **B.  Plaintiff's WLAD Claim.**

8          Plaintiff alleges he was constructively discharged because he could no longer tolerate the

9    hostile work environment caused by his co-workers' harassment and that Supervalu is liable for

10   failing to deter their actions.  Plaintiff argues that because he has a cause of action under the

11   WLAD that is separate from any action under the grievance process of the CBA, his claims

12   cannot be preempted.  Supervalu argues that, regardless of the fact that WLAD provides a cause

13   of action separate from the CBA grievance process, Plaintiff's claims are nonetheless preempted

14   by Section 301 because they require interpretation of the CBA.

15         To establish a prima facie hostile work environment claim based on co-worker

16   harassment because of sexual orientation under the WLAD, a plaintiff must show the following

17   four elements: "(1) the harassment was unwelcome, (2) the harassment was because [plaintiff

18   was a member of a protected class][2], (3) the harassment affected the terms and conditions of

19   employment, and (4) the harassment is imputable to the employer." *Loeffelholz v. University of*

20   *Washington*, 175 Wash.2d 264, 265, 285 P.3d 854 (2012); *Hotchkiss v. CSK Auto Inc*., 12-CV-

21   0105-TOR, 2013 WL 228189 (E.D. Wash. Jan. 22, 2013).  The element in dispute in this case is

22   _____

23         [2] In 2006 sexual orientation was added as a protected category under the WLAD. RCWA 49.60.030.

24

1 | the fourth—whether Supervalu is liable for Plaintiff's co-workers' behavior.  To succeed on his

2 | claim, Plaintiff must show that Supervalu "(1) authorized, knew of, or should have known of the

3 | harassment; and (2) failed to take reasonably prompt and adequate corrective action." *Hotchkiss*,

4 | 2013 WL 228189, at *5 (citing *Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348, 362, 287

5 | P.3d 51, 58–59 (2012)).

6 |      The Supreme Court has long held that Section 301 gives federal courts jurisdiction over

7 | controversies involving collective bargaining agreements.  *Textile Workers v. Lincoln Mills*, 353

8 | U.S. 448, 456, 77 S.Ct. 912 (1957).  Over time, the Court has made clear that while claims

9 | involving interpretation of labor contracts are preempted, "not every dispute concerning

10 | employment, or tangentially involving a provision of a collective-bargaining agreement, is

11 | preempted…" *Allis-Chalmers*, 471 U.S. at 210, 105 S.Ct. 1904.  Whether a state cause of action

12 | is preempted by Section 301 depends on whether the resolution of the state law claims requires

13 | an interpretation of the CBA.  *Lingle v Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06,

14 | 108 S.Ct. 1877, 1881–82, (1988); *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1522–23 (9th Cir.

15 | 1995).

16 |      In deciding whether a state law is preempted under Section 301, the Court must consider:

17 |      (1) whether the CBA contains provisions that govern the actions giving rise to a state

18 | claim, and if so,

19 |      (2) whether the state has articulated a standard sufficiently clear that the state claim can

20 | be evaluated without considering the overlapping provisions of the CBA, and

21 |      (3) whether the state has shown an intent not to allow its prohibition to be altered or

22 | removed by private contract.

23 |

24 |

1    A state law will be preempted only if the answer to the first question is "yes," and the

2    answer to either the second or third is "no."  *Miller v. AT & T Network Sys.*, 850 F.2d 543, 548

3    (9th Cir. 1988).

4    Supervalu argues that Plaintiff's WLAD discrimination claim against it for not taking

5    "appreciable action to deter the conduct" of his co-workers is preempted by Section 301, because

6    its authority to investigate and take disciplinary action against employees is governed solely by

7    the CBA.  Plaintiff concedes that Supervalu "may have needed to consult the CBA in the context

8    of how to handle the complaints lodged by the plaintiff," but argues that his claim is not

9    preempted because the WLAD codifies his right to not be discriminated against.  Both parties

10   agree that the case is governed by *Miller*, but Plaintiff argues that it supports his argument that

11   this claim cannot be preempted because he has a separate cause of action under the WLAD.

12   Plaintiff is incorrect.

13   *Miller* does hold that "the mere fact that a CBA contains terms that could govern the

14   same situations that a state law governs does not necessarily mean that the state law requires

15   interpretation of the terms in the CBA."  850 F.2d at 547.  However, *Miller* then goes on to lay

16   out the test described above, which requires courts to determine whether the terms in the CBA

17   must be interpreted in order to resolve a state law claim.  *Id*. at 548.  Thus, the Court must follow

18   the analysis laid out by the Ninth Circuit in *Miller* to determine if Plaintiff's WLAD claim is

19   preempted.

20        1. *Does the CBA govern the actions giving rise to the State claim?*

21   Under the CBA, Supervalu must establish just cause prior to disciplining any Union

22   employee.  If complaints were made under the non-discrimination policy or grievance

23   procedures, the discipline would be required to comply with CBA terms, specifically Articles 5

24

1   and 23.  Even though state law requires Supervalu to take reasonably prompt and adequate

2   corrective action, the CBA establishes regulations that are relevant to the reasonableness of

3   Supervalu's response.  Therefore, the CBA governs the actions giving rise to the state claim of

4   discrimination.  Because the answer to the first question under the *Miller* test is "yes," the Court

5   must determine whether the answer to question two or three is "no."

6       2. *Has the State articulated a sufficiently clear standard that the State claim can be*

7   *evaluated without considering the overlapping provisions of the CBA?*

8       Washington has articulated the elements of a claim of harassment based on sexual

9   orientation by co-workers under the WLAD.  The element of the claim imputing liability to the

10  employer requires an assessment of whether Supervalu took "reasonably prompt and adequate

11  corrective action."  *Hotchkiss*, 2013 WL 228189, at *5.  This may be proven by showing that the

12  employer's remedial action was "not of such nature as to have been reasonably calculated to end

13  the harassment."  *Estevez v. Faculty Club of Univ. of Washington*, 129 Wash. App. 774, 795, 120

14  P.3d 579, 588 (2005).

15      Reasonableness depends on surrounding circumstances such as "the seriousness of the

16  offense, the employer's ability to stop the harassment, the likelihood that the remedy will end the

17  harassment, and the remedy's ability to persuade potential harassers to refrain from unlawful

18  conduct."  *Baker*, 951 F. Supp. at 960 (citing *Intlekofer v. Turnage*, 9873 F.2d 773, 779 (9th Cir.

19  1992)).  Where the appropriateness of the defendant's behavior is at issue, "the terms of the CBA

20  can become relevant in evaluating whether the defendant's behavior was reasonable."  *Miller*,

21  859 F.2d at 550.

22      The established state law (WLAD) requires a reasonableness analysis, the facts specific

23  to the claim must be analyzed in this case, whether Supervalu's actions were reasonable under

24

1   the provisions of the CBA.  Supervalu's response to Plaintiff's reports and complaints of

2   harassment was necessarily governed and restricted  by its contractual obligations to Weist and

3   Munce.  In other words, the WLAD claim cannot be evaluated with reference to and application

4   of the CBA.  The answer to the second question in the *Miller* test is therefore  "no."  There is no

5   need to analyze the third question.  Because the answer to the first question under the *Miller* test

6   is "yes," and the second question is "no," Plaintiff's WLAD claim is preempted.  The Motion for

7   Judgment on the Pleadings on Plaintiff's WLAD claim is GRANTED and that claim is

8   DISMISSED.

9       **C.  Plaintiff's Remaining State Law Claims.**

10      Plaintiff does not respond to Supervalu's motion for judgment on the pleadings regarding

11  the claims of negligent infliction of emotional distress, intentional infliction of emotional

12  distress, outrage, negligent hiring, negligent supervision, and assault.  Under Local Rule 7(b)(2),

13  "if a party fails to file papers in opposition to a motion, such failure may be considered by the

14  court as an admission that the motion has merit."  The Motion is meritorious and Plaintiff's

15  remaining state law claims are DISMISSED.

16      **D.  Plaintiff's Claims are Dismissed with Prejudice.**

17      Supervalu argues that Plaintiff's claims should be dismissed with prejudice, because he

18  failed to timely exhaust his contractual remedies under the CBA, and it is far too late for him to

19  timely do so now. Plaintiff's only response is to repeat his claim that his WLAD claim stands

20  independently of the CBA and that the CBA therefore does not apply.

21      A Plaintiff whose claims are preempted by Section 301 "must at least attempt to exhaust

22  exclusive grievance and arbitration procedures established by the bargaining agreement." *Vaca*

23  *v. Sipes*, 386 U.S. 171, 184–85, 87 S. Ct. 903, 914 (1967).  The CBA's grievance and arbitration

24

1 | procedure provides that any grievance must be submitted in writing 90 days after the parties have

2 | knowledge of the matter giving rise to the grievance.

3 |    Plaintiff did not and cannot timely grieve the claims he attempts to assert in this case. The

4 | Court has already determined they are preempted and that Plaintiff was obligated to go through

5 | the CBA process. It is too late to do so now. Therefore the claims are time barred and the

6 | dismissal is with prejudice.

7 | <center>**CONCLUSION**</center>

8 |    Plaintiff's WLAD claims against Supervalu require analysis of the CBA terms and are

9 | therefore preempted under Section 301 and DISMISSED with prejudice.  Plaintiff's state law

10 | negligent infliction of emotional distress, intentional infliction of emotional distress, outrage,

11 | negligent hiring/supervision, and assault claims against Supervalu are also DISMISSED with

12 | prejudice.

13 |    IT IS SO ORDERED.

14 |    Dated this 16th day of May, 2013.

16 | _____

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE